[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff Robert Johnson appeals the decision of the defendant Inland Wetlands Commission of New Milford (commission) denying his application to conduct certain regulated activities to construct an inn, parking area and related improvements on a parcel of land on the easterly side of Route 202 in New Milford. The defendant Arthur J. Rocque, commissioner of environmental protection (DEP) was not a party in the underlying proceeding but was served with notice of this appeal and appeared as a party to this appeal pursuant to General Statutes §22a-43 (a). The commission is an inland wetlands agency acting pursuant to General Statutes § 22a-42. The plaintiff appeals pursuant to General Statutes §§ 22a-43 and 8-8. For the reasons set forth below, the court finds the issues in favor of the defendants.
The following facts are not in dispute and are found in the record of this case. By application dated February 14, 1999, the plaintiff sought a wetlands permit to construct two buildings, to relocate an existing barn and to construct a drive, parking area, septic system as well as grading and drainage on a parcel of land consisting of 4.74 acres with .37 acres of wetlands and .37 acres of watercourse. The application was presented at the commission's March 11, 1999 meeting. No action was taken at that meeting. The commission met again on March 25, 1999 to discuss the application after a site visit. No action was taken at that meeting other than suggestions and expressions of opinions as to whether the plaintiffs proposal constituted a significant activity. At the commission's April 8, 1999, meeting, the plaintiff submitted a revised plan which eliminated a building and moved the barn back seventy feet. At that meeting, the commission acted on a motion to find that the plaintiffs proposal was a significant activity so that a public hearing would be held. Public hearings were held on May 13, May 27, June 10, and June 24, 1999. At a CT Page 7371 regular meeting held on July 22, 1999, the commission denied the plaintiffs application. Notice of the denial was published in the New Milford Times on July 30, 1999. The plaintiff served this appeal on August 5, 1999, and filed it on August 11, 1999.
On January 5, 2000, the commission filed its answer to the complaint and the return of record; on February 1, 2000, the DEP filed its answer. The plaintiff filed his brief on February 10, 2000, and both defendants filed briefs on March 6, 2000. The court heard testimony on aggrievement and oral argument on April 17, 2000.
Before turning to the issues on appeal, the court must address the question of aggrievement. East Side Civic Assn. v. Planning and ZoningCommissioner, 161 Conn. 558, 559 (1971); Park City Hospital v. CHRO,14 Conn. App. 413, 417 (1988), aff'd, 210 Conn. 697 (1989). Under General Statutes § 22a-43, a person aggrieved by an order of the commission may appeal from that order. As noted most recently by our Supreme Court in Med-Trans of Conn., Inc. v. Dept. of Public Health AddictionServices, 242 Conn. 152, 158-59 (1997), the test for determining aggrievement is twofold:
 [F]irst, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision. . . .
(Citations omitted).
In Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 530
(1987), the Supreme Court held that an owner of the subject property met the two requirements to find aggrievement. The court here heard testimony from the plaintiff that he is the owner of the subject property. The defendants presented no evidence to rebut this testimony. The court finds that the plaintiff is the owner of the property and is aggrieved by the order of the commission denying his application.
In his appeal, the plaintiff claims that there is no substantial evidence that the proposed activities were likely to impact or affect wetlands or watercourses; that the commission exceeded it statutory jurisdiction; that the commission's findings are not supported by substantial evidence; that the commission improperly considered CT Page 7372 alternatives; and that the commission improperly refused to approve the application without a report from the state health department.
This court's limited scope of review of decisions from inland wetland agencies is well established.
 In reviewing an inland wetlands agency decision made pursuant to the act, the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . .
(Citations omitted; internal quotation marks omitted) Samperi v. InlandWetlands Agency, 226 Conn. 579, 587-88 (1993). In other words, this court cannot substitute its judgment for that of the commission where the record contains substantial evidence to support the commission's decision and where appropriate procedures were followed.
Turning to the plaintiff's first claim, he argues that the record lacks substantial evidence that the proposed activities were likely to impact or affect wetlands or watercourses. In that argument the plaintiff claims that the proposed development does not fall within the definition of "regulated activity" under New Milford's inland wetlands and watercourses regulations (regulations). That definition reads,
 2.1u. Regulated activity means any operation within CT Page 7373 or use of a wetland or watercourse involving removal or deposition of material, or any obstruction, construction, alteration or pollution of such wetlands or watercourses, but shall not include the specified activities listed in Section 4 of these regulations. Any of the activities listed in subparagraphs (1) through (4) of this paragraph [which are likely to impact or affect a wetland or watercourse area] shall be deemed a regulated activity when conducted within the following areas: within two hundred (200) feet of the ordinary high-water line of Candlewood Lake, the east or west branch of the Aspetuck River, the Still River or the Housatonic River; within one hundred (100) feet of the ordinary high water line of any other watercourse; or within seventy five (75) feet of any wetlands:
 1. The location of any portion of any new subsurface sewage disposal system.
 2. Clear-cutting or grubbing of land, except as permitted in Section 4 of these regulations.
 3. Excavating, filling (including hydraulic fill) or stockpiling of earth materials or any combination thereof, including the land in its excavated or filled condition.
 4. Permanent outdoor or underground storage of in excess of fifty (50) gallons of any petroleum-based product for residential uses and in excess of fifty (50) but not more than two thousand one hundred (2,100) gallons of any petroleum based product for industrial or commercial purposes, except for storage or storage capacity that is regulated by relevant state or local building codes.
(Italics in original; underlining added). See also General Statutes § 22a-38 (13).
Under the statutory scheme to preserve the wetlands, the commission is authorized to effectuate and carry out that purpose through regulation of activities affecting the wetlands and watercourses within the town of New Milford. See General Statutes §§ 22a-28, 22a-42 and 22a-42a (f). A review of the record shows that the plaintiffs claim that there was no regulated activity must fall. There is substantial evidence that the CT Page 7374 proposed septic system was within 200 feet of the Aspetuck River and that there would also be excavation and filling of earth materials within the regulated area. The commission found,
 [t]he property's physical constraints coupled with the environmental sensitivity of the property, including groundwater fluctuation, surface water fluctuation during storm events, dynamic erosive force of the river on the western embankment, high quality surface and groundwater, trout fisheries habitat, flood retention and passing, aesthetic and cultural resources, creates physical constraints that are regulated by the Wetland Commission. The project as proposed will significantly increase impervious cover, fill valuable floodplain area, commit irretrievable environmental resources along the riverene system, potentially foreclose future water quality improvement, and require alteration of the grades and retaining walls for the sole purpose of developing this plan.
(ROR, Exhibit OO at 10.)
The plaintiff also argues that there was no significant activity as defined under the regulations. Under § 2y of the regulations,
 Significant activity means any activity, including, but not limited to, the following activities which may have a substantial adverse effect or impact on the inland wetlands and watercourses within or abutting the area for which an application has been filed or on another part of the inland wetlands or watercourse system:
 1. Any activity involving a deposition or removal of material which will or may have a substantial adverse effect or impact on the wetland or watercourse.
 2. Any activity which substantially changes the natural channel or may inhibit the natural dynamics of a watercourse system.
 3. Any activity which substantially diminishes the natural capacity of an inland wetlands or watercourse to support desirable fisheries, CT Page 7375 wildlife or other biological life, prevent flooding, supply water, assimilate waste, facilitate drainage, provide recreation or open spaces or other functions.
 4. Any activity which causes substantial turbidity, siltation or sedimentation in a wetlands or watercourse.
 5. Any activity which causes a substantial diminution of flow of a natural watercourse or groundwater levels in a regulated area.
 6. Any activity which causes or has potential to cause pollution of a wetlands or watercourse or alters or destroys unique wetlands or watercourse areas having demonstrable scientific or educational value.
(Italics in original.)
There is substantial evidence in the record that supports the commission's finding of significant activity as to the first and sixth criteria. The deposition of fill on the floodplain, the relocation of the barn and the drilling of a new well bespeaks evidence meeting the first criterion; and as to the sixth criterion there was evidence as to the effect the proposed septic system and stormwater management system would have on the river. While the plaintiff argues that the evidence supporting these findings is not credible, this court must defer to the commission on issues of credibility and factual determination. The record shows that a number of witnesses, lay and expert, presented testimony before the commission, and that the plaintiff presented testimony, mostly expert, to rebut those opposing his application. Nevertheless, it is well established that the commission "is not required to believe any witness, even an expert, nor is it required to use in any particular fashion any of the materials presented to it so long as the conduct of the hearing is fundamentally fair." Huck v. Inland Wetlands Watercourses Agency, supra, 203 Conn. 542. The court finds that the plaintiff has not met his burden of showing that substantial evidence does not exist to support the commission's findings.
The plaintiff next argues that the commission exceeded its statutory jurisdiction. Citing Connecticut Fund for the Environment, Inc. v.Stamford, 192 Conn. 247, 250 (1984), he argues that the commission improperly considered the environmental impact in general in denying this application and did not limit itself to the wetland and watercourse are CT Page 7376 subject to its jurisdiction. The court has reviewed the record and the findings of the commission and finds that the commission acted within its authority as set forth in General Statutes §§ 22a-42a (d) and22a-41[1]. The detailed findings of the commission explicitly cite the statutory considerations. Accordingly, the court rejects this claim.
The plaintiff next argues that the commission's denial and stated reasons for the denial are not supported by substantial evidence in the record. First he claims that the commission does not have the authority to decide that a particular use is not appropriate or that the land is too intensely developed. The commission found that "due to the environmental sensitivity of the river front property, it may not be feasible to construct a thirty-unit inn, associated parking, septic system, well supply and stormwater management system as requested by theapplicant." (Emphasis added.) (ROR Exhibit OO at 15). That reasoning is within the commission's authority and is supported by evidence in the record. Second, the plaintiff claims that there is no credible evidence that the proposed use would impact and pollute the river or wetlands. The court has reviewed the record and finds that there is substantial evidence as to impact upon the river; specifically as to the effect of the stormwater system and the septic system on the river, which banks are eroding westward towards the proposed activity. A third claim is that the commission improperly denied the application because the plaintiff did not provide all the requested information. The commission properly specified the areas of concern and requested information from the plaintiff that addressed those areas of concern. (ROR, Exhibit OO at 12.) Notwithstanding the plaintiffs contention, this requested information related to the impact on the regulated area. Accordingly, this claim is rejected.
The plaintiff's penultimate ground for this appeal is that the commission improperly required alternatives from the plaintiff and improperly considered alternatives. The plaintiff asserts that no feasible and prudent alternatives were required here because the there was no substantial evidence that the proposed activity "may have a significant impact on wetlands and watercourses." (Plaintiff's Brief at 31.) Under General Statutes § 22a-41 (a)(2), the commission shall take into consideration, inter alia, "the applicant's purpose for, and any feasible and prudent alternatives to, the proposed regulated activity which alternatives would cause less or no environmental impact to wetlands or watercourses."
The commission properly considered those alternatives to this proposed use. While the commission did find the proposal to be a `significant activity', requiring a public hearing, the plaintiffs claim that the commission must find that the activity "may have a significant impact on CT Page 7377 wetlands and watercourse" to require feasible and prudent alternatives is not supported by the above statutory language. See also General Statutes § 22a-41 (b)(1) (when a permit is issued). Further, it was noted earlier in this decision that substantial evidence existed to support the commission's finding that the proposed activity would impact the watercourse and wetlands. The commission set forth the feasible and prudent alternatives as required under General Statutes § 22a-41 (b) (2) including alternatives that reduce the impervious surface, reduce the septic discharge and reduce water consumption and drainage requirements. (ROR. Exhibit OO at 15.)
The plaintiffs final claim is that the commission improperly refused to approve his application without a report from the state health department. In its findings, the commission stated the following,
 The Commission finds that the applicant via his experts agreed to submit the report or approval from the State Department of Health regarding the wastewater disposal and potable water supply (Exhibit Z). This information was not submitted into the record. The applicant did not request an extension of the time frame in which a public hearing can be held (section 8.4 of the Regs) so the Commission was forced to close the public hearing without this information (Exhibit JJ). Without the report from the State Department of Health the Commission concurs with the staff report dated May 27, 1999 (Exhibit S) that alterations of the wastewater and water supply portions of the project are possible and that these alterations could significantly alter the proposal for which the applicant requests approval. Even minor alterations of the wastewater management system and water supply system could result in major alterations of the project due to the physical constraints of the property and the project just meeting minimal separating distances for septic, building, well and drainage separation.
(ROR Exhibit OO at 11.)
The plaintiff argues that the commission should have granted his request to keep the public hearing open for the limited purpose of receiving the state report. The record shows that the enforcement officer, James Ferlow, suggested a mutual agreement to extend the time frame to accept the report. Plaintiffs attorney opined that the hearing could be left open limited to receiving the state report, and Ferlow CT Page 7378 disagreed. (ROR Exhibit JJ at 2.) Thereafter, no request to extend the time frame for the public hearing was made. This claim is rejected.
Many of the plaintiffs claims in this appeal relate to the factual determinations of the commission. While there were allegations of bad faith contained in the plaintiffs brief and alluded to at oral argument, no evidence was produced to support such allegations. The court reviewed the record in considering each of the plaintiffs claims.
 In challenging an administrative agency action, the plaintiff has the burden of proof. . . . The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. Rather than asking the reviewing court to retry the case do novo[,] . . . the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision.
(Citations omitted.) Samperi v. Inland Wetlands Agency, supra,226 Conn. 587.
Here, the plaintiff has not met his burden of showing a lack of substantial evidence to support the commissioner's decision. Accordingly, the appeal is dismissed.
DiPentima, J.